**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1679
_____

IRAN PEREIRA DE SOUSA,
AKA Iban Pereira DeSousa,
AKA Iban Pereira De Sousa,

                           Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of
Orders from
the Department of Homeland Security and
the Executive Office for Immigration Review
(A200-131-248)
Immigration Judge: Matthew Watters
_____

Submitted on January 20, 2021

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: February 25, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Iran Pereira De Sousa petitions for review of an immigration judge's final order of removal based on a negative reasonable fear determination. We will deny his petition.

I

De Sousa is a Brazilian citizen who was removed from the United States in 2005 for illegal entry. In 2019, he entered the United States illegally again—this time with his family—after they received a death threat from a loan shark in Brazil over De Sousa's failure to pay back a loan of 20,000 reais (approximately $4,000). To cover the journey, De Sousa took on more debt from a human smuggler.

Shortly after his second entry into the United States, De Sousa was issued a reinstated removal order. Months later, an asylum officer interviewed him to determine whether he could avoid removal by demonstrating a reasonable fear of persecution or torture in Brazil. De Sousa testified that he feared the loan shark, not mentioning the human smuggler. He explained that he borrowed money from the loan shark voluntarily but could not pay it back because he lost his job and, after briefly getting another job, lost that one too. De Sousa told the asylum officer that he would have "no problems" in Brazil if he paid the debt; that he had paid about one quarter of the debt back; and he could pay in full if he worked in the United States for another year and a half. A.R. 75. He also stated that neither he nor anyone in his family had been threatened or harmed because of ethnicity, nationality, religion, political opinion, or "membership in a particular group or organization." A.R. 76. Finally, De Sousa testified that he did not

report the loan shark's death threat to the Brazilian police because he "was afraid that if [the loan shark] found out, [his] situation would be worse." *Id.*

The asylum officer found De Sousa credible, but determined that he did not establish a reasonable fear of persecution based on a protected ground. In the officer's view, De Sousa was in a group of people "unable to repay their debts," but that group "is not statutorily protected[] [from persecution] because its membership lacks particularity and social distinction." A.R. 80. The officer also concluded that because De Sousa "did not present specific and persuasive evidence that any [Brazilian] public officials acquiesced to" the loan shark's threat, he did not demonstrate a reasonable fear of torture under the Convention Against Torture (CAT). *Id.*

De Sousa challenged the asylum officer's rulings before an immigration judge. He told the IJ that in addition to the loan shark, he also feared the human smuggler. De Sousa explained that he did not tell the asylum officer about this person because he was afraid. He repeated that he "could return to Brazil with no problems if [he] paid [his] entire debt," and reiterated and elaborated on his fear of seeking help from the Brazilian police. A.R. 11–14. According to De Sousa, the police often investigate complaints too long after a crime occurred—or do nothing—and bad actors often learn of and retaliate against those who file police reports because the bad actors "have influence on the police in many places." A.R. 13–14. De Sousa's counsel argued that De Sousa was persecuted "due to his membership in a group of poor Brazilians" whom the Brazilian authorities were unable and unwilling to protect from predatory money lenders. A.R. 18, 47.

The IJ found De Sousa credible, but concurred with the asylum officer's negative reasonable fear determination. De Sousa then filed this petition.

II

Because the IJ's negative reasonable fear determination is a final removal order, we have jurisdiction to review it under 8 U.S.C. § 1252(a)(1). *See Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018) (noting that an IJ's concurrence with an asylum officer's negative reasonable fear determination as to an alien previously removed is a final removal order under 8 C.F.R. §§ 208.31(a), (f), and (g)(1)). We review legal issues de novo, *Duhaney v. Att'y Gen.*, 621 F.3d 340, 345 (3d Cir. 2010), and we review the reasonable fear determination under the substantial evidence test, which requires us to "uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)). We will reverse an IJ's factual findings only if the record compels a contrary result. *Id.*

The IJ did not err when he concluded that De Sousa did "not establish[] a reasonable possibility that [De Sousa] would be persecuted on the basis of a protected ground." A.R. 19. The only relevant "protected ground" in this case was De Sousa's purported membership in a "particular social group" under the Immigration and Nationality Act. A particular social group must have, among other things, "discrete and definable boundaries that are not amorphous, overbroad, diffuse, or subjective, so as to provide a clear standard for determining who is a member of it." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 552 (3d Cir. 2018) (cleaned up). We have held that a proposed particular

4

social group of Honduran street children defined by "'poverty, homelessness, and youth' was . . . 'too vague and all encompassing' to set discernible parameters." *Id.* (quoting *Escobar v. Gonzales*, 417 F.3d 363, 368 (3d Cir. 2005)). The same is true for "poor Brazilians." As we noted in *Escobar*, "[i]ncidents of deprivation and suffering are, unfortunately, universal and not confined to one country." *Escobar*, 417 F.3d at 367. "[T]he record fails to show any realistic differences between [poor Brazilians] and [poor people] of . . . hundreds of other locations across the globe." *See id.* De Sousa's attempt to define the group specifically as people making under $1.90 a day does not help him distinguish *Escobar* because, as he acknowledges, that definition is an international standard that is not specific to Brazil. *See* De Sousa Br. 8; A.R. 47 n.1; WORLD BANK GRP., REVERSALS OF FORTUNE: POVERTY AND SHARED PROSPERITY 2020, at 121 (2020), https://openknowledge.worldbank.org/bitstream/handle/10986/34496/9781464816024.pdf (discussing "the international poverty line of . . . $1.90 a day").

De Sousa's CAT argument fares no better than his persecution claim. The evidence does not compel a factual finding supporting the legal conclusion that Brazilian authorities are likely to acquiesce to threats or violence against him. *See Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005) (official acquiescence is a necessary element of a CAT claim).

De Sousa testified credibly that he thought going to the police would be futile and risk reprisal from his lenders. But as the IJ emphasized, De Sousa indicated that the police would probably investigate the threats eventually. Neither De Sousa's testimony nor his general evidence about Brazilian income inequality and police violence against

poor Brazilians leads us to conclude that Brazilian authorities are likely to acquiesce to lenders threatening or otherwise harming him. *See Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 181 (3d Cir. 2020) (establishing acquiescence requires showing either that the government was willfully blind to the torture or that "a public official was aware of it and thereafter breached his or her legal responsibility to intervene to prevent it").

\*　　\*　　\*

For the reasons stated, we will deny De Sousa's petition for review.